**MARCAL PAPER MILLS, INC.,**
**Plaintiff, Appellant,**

**v.**

**Marvin W. EWING, Director of Bureau of Standards, Maine Department of Labor, Defendant, Appellee.**

No. 85–1789.

United States Court of Appeals, First Circuit.

Argued Feb. 3, 1986.

Decided May 9, 1986.

Richard G. Moon with whom Linda D. McGill, John H. Rich III, and Perkins, Thompson, Hinckley & Keddy, Portland, Me., were on brief, for plaintiff, appellant.

Thomas D. Warren, Asst. Atty. Gen., with whom James E. Tierney, Atty. Gen., Augusta, Me., was on brief, for defendant, appellee.

Before BOWNES and ALDRICH, Circuit Judges, and PETTINE,* Senior District Judge.

BOWNES, Circuit Judge.

Marcal Paper Mills, Inc., seeks review of a decision by the United States District Court for the District of Maine in which the court abstained from considering the merits of an action brought by Marcal for declaratory and injunctive relief against the Director of the Maine Bureau of Labor Standards (the Director). At the time Marcal commenced this federal action, the Director was pursuing an action in Maine Superior Court to enforce the Maine severance pay statute, 26 M.R.S.A. § 625–B (Supp.1985), and had obtained an attachment in the amount of $400,000 on certain of Marcal's Maine property. The district court declined to reach the merits of Marcal's challenge to the Maine severance pay law, citing the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct.

* Of the District of Rhode Island, sitting by designation.

746, 27 L.Ed.2d 669 (1971), and its progeny. Marcal now appeals this ruling.

The state enforcement action provides the factual background for Marcal's federal action and its appeal. After fifteen years of operation, Marcal closed its paper mill in Mechanic Falls, Maine, in the fall of 1981. At that time, it laid off almost all of its employees. Marcal had no pension or severance pay plan and no severance pay was in fact paid. Under Maine law, employers who close or relocate an industrial or commercial facility employing more than 100 employees and do not have in force a legal binding pension plan covering each employee are liable to its employees for one week of severance pay for each year an employee has worked at the facility. 26 M.R.S.A. § 625–B. An employee must have worked for the employer for at least three years to be eligible for severance pay under the statute and no liability is imposed for plant closings due to physical calamity or bankruptcy. *Id.* In February of 1982, the State Director commenced an action against Marcal in the Maine Superior Court to enforce the provisions of the severance pay law. Marcal answered in March of 1982, claiming that the severance pay law was preempted by both ERISA and the National Labor Relations Act and that the law also violated due process and impaired the obligation of contracts under the United States Constitution. The State then moved to attach Marcal's Mechanic Falls property and the motion was granted in September of 1982. Requests for discovery were also served on Marcal at this time.

In October of 1982, the Maine Superior Court issued a decision in *Ewing v. Fort Halifax Packing Co.*, CV–81–516 (Superior Court, Kennebec County, Oct. 29, 1982), an unrelated case raising precisely the same federal preemption and constitutional challenges to the severance pay law. The Superior Court in *Fort Halifax* upheld the severance pay law against these challenges. In July of 1983, Marcal began an action in federal district court seeking to have the severance pay law declared preempted by federal law and held unconstitutional and to have the State enjoined from enforcing the law against Marcal. In October of 1983, Marcal moved the Maine Superior Court for a voluntary stay of the state court proceeding pending the conclusion of the federal declaratory judgment action. This motion was granted by the state court for reasons of "comity" over the objections of the State. This stay was reaffirmed by the Superior Court in July of 1984. A few days later, Marcal moved for summary judgment in its federal action, raising its ERISA and NLRA preemption claims and its federal constitutional claims. Subsequent to the district court's decision to abstain, the Maine Supreme Judicial Court heard argument on the *Fort Halifax* case. Law Docket No. KEN–85–216 (argued Nov. 15, 1985). The Maine Superior Court then amended its stay order to extend only until the Supreme Judicial Court issued a decision in *Fort Halifax.*

The district court based its decision to abstain on the Supreme Court's recent extension of *Younger* abstention to civil cases and on the three-part test for *Younger* abstention set forth in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The basic principle of *Younger* abstention is that a federal court should not enjoin or interfere with state court proceedings so long as the parties may raise their federal defenses in the state proceedings. *Younger*, 401 U.S. at 43, 91 S.Ct. at 750. It is based upon considerations of equitable restraint, which require that a federal court not interfere with state judicial proceedings unless there is a threat of irreparable injury with no adequate remedy at law, *Younger* at 43, and considerations of comity and federalism, which counsel respect for both state enforcement of state laws and the ability of state courts to give proper attention to federal law defenses. *Middlesex*, 457 U.S. at 431, 102 S.Ct. at 2521. Although *Younger* abstention was initially limited to state criminal proceedings, 401 U.S. at 45–49, 91 S.Ct. at 751–53, the district court found that the Supreme Court

has since abandoned any limitation of *Younger* abstention to criminal prosecutions or proceedings "in aid of and closely related to criminal statutes," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). It relied on such cases as *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (abstention from state statutory contempt proceedings), *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (abstention in civil welfare fraud action), *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (abstention from state disciplinary proceeding against lawyer), and *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (abstention from proceedings to remove children from abusive parents). The district court held that *Younger* abstention would be appropriate with regard to the civil enforcement action initiated by the State if the requirements set out in *Middlesex*, 457 U.S. at 432, 102 S.Ct. at 2521, were met.

The district court parsed the *Middlesex* test as follows: the state proceedings must be judicial proceedings, the proceedings must implicate important state interests, and there must be an adequate opportunity to raise federal defenses in the state proceedings. With regard to the proceeding in the Maine Superior Court, the district court held that even though it had been voluntarily stayed to allow the federal proceedings to decide the federal issues, considerations of comity still dictated abstention. In particular, the district court pointed to the long interval between the commencement of the state action and the commencement of the federal action, the fact that the State opposed federal interference in this state enforcement action, and the ability of the state court to deal with Marcal's federal defenses. The court went on to find that Maine's interest in reducing the economic impact of plant closings was an important state interest equal to those interests found by the Supreme Court to justify abstention in civil cases. Finally, there was no doubt that Marcal would have a full opportunity to raise its federal defenses in the state proceeding.

Marcal has made a number of arguments in support of its claim that the district court erred in dismissing its federal action on abstention grounds. First, Marcal argues that, even if *Younger* abstention is broad enough to encompass this kind of civil case, it should not be invoked in cases where state laws are claimed to be preempted by federal statutes. Since federal preemption necessarily involves an evaluation that state power must be circumscribed in a particular area, Marcal suggests that it does not make sense to invoke considerations of comity and federalism in cases where a strong possibility of preemption exists. Such a strong possibility exists here, Marcal argues, because of the broad preemptive effect of ERISA, as found by the Supreme Court in *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Marcal contends that the Maine severance pay law is preempted by the provision in ERISA that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." The overwhelming federal interest in consistent interpretation of ERISA, Marcal urges, is enough to counsel against abstention in this case.

Marcal also argues that, even if there is no preemption exception to *Younger* abstention, abstention is not appropriate in this case under the *Middlesex* criteria. Marcal claims that the existence of a voluntary stay by the Maine court means that there is no "ongoing" state proceeding which would be interfered with by federal action. Furthermore, it points out that this voluntary stay was granted by the state court for reasons of comity because it recognized these issues as of primarily federal concern. It would be absurd, Marcal argues, to invoke comity to force a state to resolve issues it has admitted are more properly decided by the federal court. Finally, Marcal argues that the proceeding does not involve the kind of exclusively state interests which have justified the ex-

tension of *Younger* abstention to civil cases in the past.

In *Puerto Rico International Airlines, Inc. v. Silva Recio,* 520 F.2d 1342 (1st Cir.1975), we refused to extend mandatory *Younger* abstention to a civil case between private parties. We did, however, consider the possibility of discretionary abstention based on traditional equitable principles and determined that the presence of federal preemption defenses was not sufficient to require the district court to accept the case. We stated that

> [t]he equitable counterbalance includes the possibility that the Puerto Rico Supreme Court will, in following the Commonwealth case to conclusion, find the local statute inapplicable to PRINAIR or itself resolve the federal law dispute in PRINAIR's favor. And against any claim PRINAIR has to immediate federal court resolution must be weighed the unseemliness of duplicative court proceedings and the unnecessary federal-state friction that will be generated.

*Id.* at 1345. Although the law has shifted somewhat since this opinion, we find that concerns about comity and duplicative proceedings dictate the same result in this case. Thus, even were we to hold that *Younger* abstention is generally inappropriate in cases involving issues of federal preemption, as has the Second Circuit in *Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323, 326 n. 2 (2nd Cir.1982), aff'd without opinion on other grounds, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), the fact that the Maine Supreme Judicial Court now has before it these same preemption issues in an unrelated case is good reason for the exercise of discretionary abstention.

Regardless of the federal interest in ERISA preemption, it does not make sense for a state and federal appellate court in the same geographical circuit to decide precisely the same complex issues of state and federal law at about the same time. The Maine Supreme Judicial Court may well find that the Maine severance pay law is preempted by ERISA. In the worst case scenario for Marcal, the Maine Supreme Judicial Court will find that the Maine severance pay law is not preempted by ERISA. In that case, either Fort Halifax Packing Co., the defendant in the case currently before the Maine Supreme Judicial Court, or Marcal, once judgment is entered on its case based on the *Fort Halifax* result, has an appeal as of right to the United States Supreme Court. 28 U.S.C. § 1257(2). Under either situation, our consideration of these same issues would be a waste of judicial time and effort. Furthermore, if we were to decide these issues and reach a result contrary to the result reached by the Maine Supreme Court, this would precipitate a direct confrontation over the binding nature of our decision versus that of the Maine Supreme Court upon the Maine Superior Court in the Marcal proceeding. This would result in unnecessary federal-state friction which can be avoided by our abstention. We, therefore, hold that, under the circumstances of this particular case, abstention is appropriate.

We express no opinion as to the general extension of *Younger* abstention to civil cases of this kind or whether or not there should be a preemption exception to the *Younger* abstention doctrine.

*Affirmed.*

BAILEY ALDRICH, Senior Circuit Judge, concurring.

I concur in the result, but only because I see no merit whatever in appellant's contention that ERISA preempts even when an employer has no plan. The concept that fifty states could determine what the ERISA statute means until reversed by the Supreme Court on direct appeal is, with due respect to my brethren, contrary to the whole principle of preemption. It seems to me that this is the effect of the court's language. However, appellant cannot have it both ways; no ERISA, and no state statute.