**Earnest T. HICKS**

v.

**The GEORGIA STATE BOARD OF PHARMACY, et al.**

**Civ. A. No. C81–1163.**

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 21, 1982.

Isabel Gates Webster, Atlanta, Ga., for plaintiff.

Don A. Langham, Verley J. Spivey, John C. Jones, Asst. Attys. Gen., Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the Court on Defendants' Motion to Dismiss or in the Alternative for Summary Judgment.

Plaintiff Earnest Hicks brought this action against the Georgia State Board of Pharmacy and its present members, in their official and individual capacities, for alleged deprivation of his constitutional rights. Hicks alleges specifically that the Board's refusal to reinstate his license to practice pharmacy violated his rights to procedural due process and equal protection of the laws under the Fourteenth Amendment and 42 U.S.C. § 1983. He seeks compensatory and punitive damages, and equitable relief in the form of reinstatement. The Court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(3).

Defendants move to dismiss for failure to state a claim [1] on the grounds that Plaintiff has no constitutional right to reinstatement of his license, that Plaintiff's claim for damages is barred by the Eleventh Amendment and the doctrine of absolute immunity for quasi-judicial functions of regulatory board members, and that Plaintiff has failed to exhaust administrative remedies. For the reasons that follow, Defendants' Motion to Dismiss is granted.

Plaintiff Hicks was a registered pharmacist under the laws of Georgia until his license was revoked in 1978 for failure to keep proper records as required by the Georgia Pharmacy Code. Ga.Code Ann. §§ 79A–101 *et seq.* An investigation conducted by federal and state drug agents revealed that Hicks had been ordering large quantities of Quaalude and other Schedule II drugs,[2] but that he did not maintain the order forms and invoices required by federal and state regulations. The investigation further showed that he did not have prescriptions on file to account for all the drugs he ordered and that he failed to maintain biannual inventories required of Schedule II drugs.

An accountability audit revealed that Plaintiff had purchased approximately 24,000 Quaalude tablets in a three-month period and that his pharmacy could not account for 23,408 of the tablets. The pharmacy was unable to account for any Demerol injectables which Hicks ordered during a similar time period.

Hicks was indicted in DeKalb County for possession with intent to distribute Quaalude and for failure to maintain records required under the Georgia Controlled Substances Act, Ga.Code Ann. §§ 79A–801 *et seq.* He pled nolo contendere to the charges in February 1978 and was fined $1,000 and sentenced to 12 months probation.

The State Board of Pharmacy issued a notice of hearing on April 12, 1978 charging Hicks with violations of state pharmacy laws. After a hearing at which Plaintiff was represented by counsel, a hearing officer recommended that Hicks' license be suspended for one year. The Board reviewed the recommendation and in a final decision on October 30, 1978 revoked Hicks' license. Hicks appealed the Board's decision pursuant to the Georgia Administrative Procedure Act. Ga.Code Ann. § 3A–120. The decision was affirmed in Fulton County Superior Court on June 11, 1979 and Hicks' further appeal to the Georgia Court of Appeals was dismissed as untimely on November 13, 1979.

On May 14, 1980, at Plaintiff's request, Plaintiff and his attorney appeared before the Board of Pharmacy to request reinstatement of Hicks' license. The Board requested that Hicks produce documentary evidence explaining the discrepancies which led to the revocation in the first place. Hicks did not and has not produced such evidence.[3] He apparently offered no other explanation at the hearing for the events which led to the revocation. The Board informed him on June 13, 1980 and again on March 6, 1981 that no further action would be taken on his request unless he could produce additional information. Hicks then brought this lawsuit.

---

1. Rule 12(b)(6), Fed.R.Civ.P. Defendants have moved in the alternative for summary judgment under Rule 56, but they have failed to submit a statement of material facts as to which they contend there is no genuine issue to be tried, as required by Local Rule 91.72. Because the issues presented by the motion are predominantly legal issues, and because the record does not reveal the existence of material factual disputes, the Court elects to proceed with the motion despite Defendants' omission.

2. Ga.Code Ann. § 79A–805 (1974).

3. Defendants contend Hicks offered to produce such records at the hearing in May 1980. Hicks claims that he made no such offer, that such exculpatory records do not exist, and that the Board members knew such records did not exist at the time of their request.

Hicks did present a set of questions asked of him on a polygraph examination in connection with an employment application, but not the report evaluating his responses to those questions.

In any event, the Court does not find this dispute to be material to the issues presented by Defendants' motion.

■ Plaintiff's claim for damages and prospective injunctive relief against the State Board of Pharmacy is barred by the Eleventh Amendment.[4] *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978). Insofar as he seeks damages from the Board members in their official capacities, Plaintiff's suit in effect is a suit against the State and is also barred. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Finally, the Court finds that the Board members in their individual capacities are absolutely immune from damages liability due to the judicial nature of their activities in this case. *Butz v. Economou,* 438 U.S. 478, 513–15, 98 S.Ct. 2894, 2914–15, 57 L.Ed.2d 895 (1978); *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir.1980).

In *Butz,* the Supreme Court held that federal agency officials who perform judicial or quasi-judicial functions are absolutely immune from damages for those functions. The doctrine of absolute immunity for judges and judicial officers is longstanding, and is grounded in the need to preserve the independent judgment, free of pressure from disgruntled parties, essential to the judicial function. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Bradley v. Fisher,* 13 Wall 335, 20 L.Ed. 646 (1872). The doctrine is based in part on the notion that "the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct." *Butz,* 438 U.S. at 512, 98 S.Ct. at 2914.

The Court in *Butz* found federal administrative adjudication to be "functionally comparable" to the judicial process, with many of the same procedural safeguards against arbitrary action. Administrative adjudication is adversary in nature, conducted before a trier of fact insulated from political influence, requiring agency findings on the record, with judicial review ultimately available. The Court stated:

> In light of these safeguards, we think that the risk of an unconstitutional act by one presiding at an agency hearing is clearly outweighed by the importance of preserving the independent judgment of these men and women.

438 U.S. at 514, 98 S.Ct. at 2915.[5]

■ The Fifth Circuit has applied the reasoning of *Butz* to state proceedings. *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir.1980). In *Marrero* the Court faced the question of the absolute immunity of a state prosecutor and concluded, "it is untenable to draw a distinction for the purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." 625 F.2d at 507 (quoting *Butz,* 438 U.S. at 504, 98 S.Ct. at 2909). A state prosecutor acting in a quasi-judicial capacity is therefore entitled to absolute immunity from damages.[6]

In a recent case in this District, Judge Forrester applied this analysis to find absolute immunity for members of the Composite State Board of Medical Examiners in the performance of their functions in initiating and adjudicating proceedings against licensees. *Jackson v. Bridges,* No. C81–1874A (N.D.Ga. June 29, 1982). Judge Forrester examined the statutory responsibilities of the medical examiners as well as the procedural safeguards, including judicial review, accorded persons subject to proceedings of

---

**4.** The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const.Amend XI.

The amendment has been construed to bar suits against a state by citizens of that state. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974).

**5.** The Court also held that the decision to initiate or continue a proceeding subject to agency adjudication is absolutely protected. 438 U.S. at 516, 98 S.Ct. at 2916.

**6.** The *Marrero* court found that the official involved there acted outside his quasi-judicial capacity and therefore *held* that he was not entitled to absolute immunity in that instance.

**318**

the agency. He concluded that the proceedings were sufficiently "judicial" to warrant the protection of *Butz* immunity.

The responsibilities and safeguards which Judge Forrester found determinative are quite similar to those under the Pharmacy Code. Board of Pharmacy members, like medical examiners, have the power to grant a license or discipline a pharmacist under stated statutory conditions. Ga.Code Ann. §§ 79A–209, 79A–408. The Board has the power to subpoena witnesses and other evidence. Its adjudications and investigations are subject to notice and an opportunity for hearing, and are conducted in accordance with the state Administrative Procedure Act. Ga.Code Ann. § 3A–101 et seq.

■ In cases involving issuance, suspension or revocation of a license, the proceedings are treated as a "contested case" under the APA. Ga.Code Ann. §§ 3A–119 to 20. In such proceedings a formal record is kept and findings are required based on the record evidence; a full opportunity for cross-examination is afforded; and judicial review of the Board's final decision is available. Ga.Code Ann. § 3A–120. In light of these safeguards, and the role of Board members in applying statutory standards in adjudicative proceedings, the Court finds that members are absolutely immune from damages in the exercise of their quasi-judicial functions.[7]

The Court therefore finds that Plaintiff's claim for damages does not lie against any of the Defendants.

Hicks seeks reinstatement of his pharmacist license on the theory that the Board's failure to reinstate him in 1980 was a violation of due process and equal protection. He alleges that the Board's lack of standards for deciding reinstatement claims, and the fact that the Board has reinstated the licenses of other revokees, give rise to the constitutional claims.

■ It is clear that a license, once granted, gives rise to a protected property interest under the constitution. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Hicks does not contend, however, that the original proceedings to revoke his license deprived him of property without due process.[8] The question for the Court is rather whether Hicks had a protectible interest in having his license reinstated following a concededly valid revocation.

■ The guidelines for determining the existence of a property right under the due process clause were set forth in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Court stated:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709.

The expectations giving rise to a property interest may not be unilateral on the part of the claimant, however, and must be based on a "mutually explicit understanding" derived from applicable rules. *Leis v. Flynt,* 439 U.S. 438, 442, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979); *Perry v. Sinderman,* 408 U.S. 593, 601–602, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972).

■ The record here is devoid of any source from which Plaintiff may claim a legitimate expectation of a right to reinstatement. The Georgia Pharmacy Code makes no provision for reinstatement; requests for reinstatement apparently are committed to the discretion of the Board. And the Georgia courts have held that li-

---

**7.** Plaintiff has not alleged that Board members acted outside the scope of their statutorily prescribed functions.

**8.** There is a suggestion in Plaintiff's Brief in Opposition to the Motion that the revocation issue was wrongly decided on the merits in the

first instance. The Court will not relitigate this claim after Hicks had a full and fair opportunity to present it in the state proceedings. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176, 1183 (11th Cir.1981).

censees are entitled only to a hearing to contest suspension or revocation of a license. They are "entitled to no other hearing under the statute." *Hinson v. Georgia State Board of Dental Examiners,* 135 Ga.App. 488, 489, 218 S.E.2d 162 (1975). Clearly there is no statutory obligation to reinstate a revoked license or even to consider such requests. The Board is therefore not required to base its denial of reinstatement on any objective criteria. Indeed the Board may deny relief for any legitimate reason or for no reason at all. *Meachum v. Fano,* 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976).

Plaintiff nonetheless contends that the Board's occasional practice of granting reinstatement to other applicants is sufficient to create a protectible interest.[9] The Supreme Court rejected a similar claim in *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981). In *Dumschat,* Plaintiffs were life inmates who argued that the state's consistent practice of granting commutations created a protected expectation that their sentences would be commuted. The Court held:

> A constitutional entitlement cannot 'be created—as if by estoppel—merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past.' No matter how frequently a particular form of clemency has been granted, the statistical probabilities standing alone generate no constitutional protections; a contrary conclusion would trivialize the Constitution. The ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising clemency.

452 U.S. at 465, 101 S.Ct. at 2464 (citations omitted).

**9.** The record shows that the board reviewed 16 requests for reinstatement of revoked or forfeited licenses from 1979 to 1981 and granted three requests.

**10.** The record shows that the violations of the three pharmacists whose licenses were reinstated between 1979 and 1981 were less severe than Hicks' and that each of the three produced evidence to satisfy the Board that their future

Plaintiff has not established a property right necessary to invoke due process. His due process claim is therefore dismissed.

■ Finally, Plaintiff argues that the Board's decision to reinstate the licenses of others denied him equal protection of the laws. The Constitution requires that similarly situated individuals be treated similarly. *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971). Where administrative classifications are made, absent a fundamental right or suspect classification such as race, equal protection requires only that the classification bear a rational relation to a legitimate purpose. *Id.* at 76, 92 S.Ct. at 254.

■ Plaintiff has not alleged that the Board's purpose in refusing to reinstate him was improper or that its decision was irrational. Indeed, he has not alleged facts even showing that he was similarly situated to those who were reinstated. In its final decision to revoke Hicks' license the Board stated: "The Board has never experienced such a flagrant violation of improper recordkeeping and disrespect of the Pharmacy Laws of this state and misconduct of the Pharmacist himself."[10] Given Hicks' inability to produce evidence either explaining his past conduct or assuaging the Board's concern about his future conduct, Hicks has not sufficiently alleged that the decision not to reinstate him was irrational. Plaintiff's equal protection argument therefore must be rejected.

Defendants' motion to dismiss or in the alternative for summary judgment is GRANTED.[11]

SO ORDERED, this 21st day of December, 1982.

conduct would conform to the laws and regulations of the state.

**11.** The Court need not consider Defendants' exhaustion of remedies arguments, but notes that exhaustion of administrative remedies is not generally required in § 1983 suits. *Patsy v. Board of Regents,* —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).