D. Robert HOWARD, M.D.

v.

William G. MILLER, Jr., Individually and Officially as Joint Secretary, State Boards, State of Georgia; Donald L. Branyon, Jr., M.D., Larry E. Brightwell, M.D., Thomas J. Busey, Jr., M.D., Richard K. Chase, D.O., Hoyt C. Dees, M.D., Runette Flowers, M.D., F. James Funk, Jr., M.D., William S. Hitch, M.D., W. Gordon Irwin, D.O., Ellis B. Keener, M.D., Robert N. Pilon, M.D., Irving T. Staley, M.D., and Patricia A. Stephens, Individually and Officially as Members of the Composite State Board of Medical Examiners of the State of Georgia; and Andrew Watry, Individually and Officially as the Executive Director, Composite State Board of Medical Examiners; and David Morgan, M.D., Individually and Officially as the Medical Director, Composite State Board of Medical Examiners of Georgia.

Civ. No. 1:93–CV–1209–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 4, 1994.

Dees, M.D., Runette Flowers, M.D., F. James Funk, Jr., M.D., William S. Hitch, M.D., W. Gordon Irwin, D.O., Ellis B. Keener, M.D., Robert N. Pilon, M.D., Irving T. Staley, M.D., Patricia A. Stephens, Individually and Officially as Member, Andrew Watry, Individually and Officially as Executive Director, David Morgan, M.D., Individually and Officially as Medical Director, Composite State Bd. of Medical Examiners of Georgia.

## ORDER

ORINDA D. EVANS, District Judge.

This civil action, which asserts claims under 42 U.S.C. § 1983 and the Georgia Constitution, is before the court on Defendants' motion to dismiss and motion for a protective order.

### FACTUAL BACKGROUND

Plaintiff, a medical doctor, was licensed to practice medicine in Georgia. At the time of the events at issue in this action, Plaintiff both taught and practiced family medicine at Memorial Medical Center in Savannah, Georgia.

On May 11, 1993, an investigator with the Composite State Board of Medical Examiners ("Board") contacted Plaintiff at his home and requested that Plaintiff meet him at Plaintiff's office. Four of the Board's investigators were waiting for Plaintiff when he arrived at his office. The investigators served Plaintiff with an "Order of Summary Suspension of Privileges for the Prescribing of Controlled Substances."[1] The investigators also served Plaintiff with a Notice of Hearing concerning the charges against him. Plaintiff alleges that the investigators then told him that he had to surrender the registration certificate which the Drug Enforcement Administration ("DEA") had issued to him, as well as surrender all controlled substances in his possession. Plaintiff asserts that he "was afraid that if he did not do everything they told him to do, he would lose

Harold Dennis Corlew, Walls & Corlew, Atlanta, GA, for plaintiff D. Robert Howard, M.D.

Julia B. Anderson, Office of State Atty. Gen., Atlanta, GA, for defendants William G. Miller, Jr., Individually and Officially as Joint Secretary, State Examining Boards, State of Georgia, Donald L. Branyon, Jr., M.D., Larry E. Brightwell, M.D., Thomas J. Busey, Jr., M.D., Richard K. Chase, D.O., Hoyt C.

---

1. Defendants allege that the Board summarily suspended Plaintiff's prescription privileges because it had evidence that "Plaintiff was prescribing controlled substances to known drug addicts and to patients for other than legitimate medical reasons." Brief in Support of Motion to Dismiss ("Brief in Support") at 2.

his license to practice medicine or might even be arrested." Brief in Opposition to Motion to Dismiss ("Brief in Opposition") at 3.[2] Pursuant to the investigators' instructions, Plaintiff subsequently surrendered his DEA certificate to his immediate supervisor at Memorial Medical Center.

Plaintiff asserts that Defendant David Morgan ("Morgan") called him on May 12, the day after Plaintiff lost his prescription privileges. According to Plaintiff, Morgan instructed him that on either May 12 or 13 Plaintiff would have to commence a 96–hour inpatient medical and psychological evaluation at one of two hospitals in Georgia if he wished to keep his medical license. Plaintiff asserts that he "thought he had no choice but to comply with Morgan's demand." Brief in Opposition at 4.[3] Plaintiff checked into one of the hospitals on May 13.

On May 14, two of the Board's investigators visited Plaintiff at the hospital. Plaintiff asserts that the investigators

> told him that [he] had to sign a form entitled "Voluntary Surrender of Controlled Substances Privileges." ... The investigators told the plaintiff that this was a mere technicality since he had already surrendered [his] DEA certificate [to his superior] at Memorial Medical Center. At this point, the plaintiff was afraid that if he did not do everything the Board told him to do, he would lose his license to practice medicine. Although the plaintiff did not want to sign this form, he was afraid not to. The plaintiff ultimately signed the form, but not voluntarily and not of his own free will.

Brief in Opposition at 4–5.

On May 17, Plaintiff was still in the hospital undergoing evaluation. One of the

Board's investigators visited him at the hospital and served him with two documents: (1) an "Order of Summary Suspension of Medical License" and (2) a "Pre–Hearing Order for Mental/Physical Examination."[4] Plaintiff asserts that he had not had a hearing regarding the suspension of his license by the time he filed his Brief in Opposition (July 16, 1993); Plaintiff also asserts that the hearing was scheduled for July 27, 1993. Plaintiff asserts that he has lost his job at Memorial Medical Center and is unable to practice medicine.

## PROCEDURAL POSTURE

Plaintiff filed this action on June 1, 1993. Plaintiff describes his action as follows:

> The plaintiff does not seek damages because the defendants initiated the pending disciplina[r]y proceeding against him. Instead, the plaintiff is seeking damages for the summary actions taken by the Board against him—summarily coercing him to surrender his DEA registration and summarily suspending his license to practice medicine.... [T]he plaintiff does not seek to enjoin the administrative proceeding now scheduled to commence on July 27. The plaintiff has prayed, however, for injunctive relief in the event the Board permanently revokes his license upon unconstitutional procedures. The plaintiff also seeks permanent injunctive relief to enjoin the defendants from continuing the custom and practice of summarily suspending doctors' licenses without notice and an opportunity to be heard. Thus, none of the relief sought by the plaintiff impairs the

---

**2.** Plaintiff alleges that "[a]s they were serving the papers upon the plaintiff and issuing instructions to him, the State investigators were very threatening and intimidating." Brief in Opposition at 2.

**3.** Plaintiff asserts that "Morgan was hostile during this telephone call and [led] the plaintiff to believe that he had no alternative but to do as he ordered ... if [Plaintiff] wanted to continue practicing medicine." Brief in Opposition at 4.

**4.** The order suspending Plaintiff's medical license states that the Board received "reliable information" that Defendant was unable to prac-

tice medicine with reasonable skill and safety to patients because of, among other things, drug use. The order also states that "[t]his information includes, but is not limited to," evidence that Plaintiff (1) ordered large quantities of aspirin with codeine, diazepam, didrex, and hydrocodone/APAP from a drug supplier; (2) appeared to be under the influence of some mood-altering substance on May 11 when the investigators served him with the order suspending his prescription privileges; and (3) admitted on May 11 to recent use of marijuana, diazepam, aspirin with codeine, and hydrocodone/APAP.

defendants' right or ability to proceed with the pending disciplinary proceeding.

Brief in Opposition at 5–6 (footnotes omitted).[5] In one of the footnotes omitted from this passage, Plaintiff asserts that the Board lacked the authority to suspend his prescription privileges. *Id.* at 6 n. 3.[6]

Plaintiff seeks the following specific relief:

(1) Compensatory and general damages of $500,000.00.

(2) Punitive damages of $5,000,000.00 "to deter [Defendants] from ever again depriving a doctor of his license without due process of law." Complaint at 8.

(3) Reasonable attorney's fees and costs under 42 U.S.C. § 1988.

(4) "That the Defendants be enjoined from suspending any doctor's license to practice medicine, including the Plaintiff's license, until such time as the accused doctor has been afforded due process of law, i.e., notice and an opportunity to be heard, as required by the Constitutions of the United States and the State of Georgia." Complaint at 8–9.

Defendants filed their motion to dismiss on June 23, 1993. Leaving aside for the moment Plaintiff's request for injunctive relief, Defendants argue that the court should dismiss the action against them in their official capacities on the ground of eleventh amendment immunity, while the court should dismiss the action against them in their individual capacities on the ground of absolute judicial immunity. Because *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), allows the court to abstain from deciding Plaintiff's request for injunctive relief, Defendants argue that the court should dismiss without prejudice Plaintiff's request for injunctive relief. Defendants' motion for a protective order seeks a stay of discovery pending the court's decision on their motion to dismiss.

## ANALYSIS

Defendants have asserted, via a motion to dismiss, that several affirmative defenses compel the dismissal of Plaintiff's complaint. "Generally, the existence of an affirmative defense will not support a motion to dismiss. Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir.1984) (citations omitted), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1992, 1993, 90 L.Ed.2d 673 (1986).

■ Plaintiff's complaint on its face reveals that he has sued Defendants in their official capacities based on their affiliation with Georgia's Composite State Board of Medical Examiners. The eleventh amendment prohibits an action in federal court against a state by a citizen of that state. *Hicks v. Georgia State Bd. of Pharmacy,* 553 F.Supp. 314, 317 n. 4 (N.D.Ga.1982) (Evans, J.) (citing *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974)). "Insofar as he seeks damages from [Defendants] in their official capacities, Plaintiff's suit in effect is a suit against the State and is ... barred." *Hicks,* 553 F.Supp. at 317 (citing *Edelman* ). Therefore, Defendants' motion to dismiss is granted to the extent that Plaintiff seeks damages from Defendants in their official capacities.

■ Plaintiff's complaint on its face also reveals that he has sued Defendants in their individual capacities on the ground that their summary suspensions of his prescription privileges and medical license were unlawful. Defendants claim that the doctrine of absolute immunity shields them from personal liability. The doctrine of absolute immunity originally arose in the context of actions against judges. *See Butz v. Economou,* 438 U.S. 478, 508–09, 98 S.Ct. 2894, 2911–12, 57

---

5. Plaintiff asserts that "[a]s State officials, the Defendants knew, or reasonably should have known, that due process require[d] that the State provide [Plaintiff] with notice and a hearing before they suspended his license to practice medicine or his license to prescribe controlled substances." Complaint, ¶ 9.

6. In his brief, Plaintiff asserts that the Board "has absolutely no authority to regulate the issuance of [DEA] registrations and no authority to restrict a doctor's right to prescribe controlled substances." Brief in Opposition at 19.

L.Ed.2d 895 (1978). "Judicial immunity is an absolute immunity; it applies even where a judge acts maliciously." *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir.1986). Two considerations govern whether a judge is entitled to absolute immunity: First, the judge must have "dealt with the plaintiff in a judicial capacity." *Harris*, 780 F.2d at 914. Second, if the judge dealt in a judicial capacity, he or she is entitled to immunity unless "the judge acted in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978)).

In *Butz*, the Supreme Court extended the protection of the doctrine of absolute immunity to members of federal agencies who are sued in their individual capacities for actions taken while performing judicial, as opposed to legislative, functions. *Id.*, 438 U.S. at 514, 98 S.Ct. at 2914. In *Hicks*, this court relied on the reasoning in *Butz* and other cases to find that absolute immunity was available to members of Georgia's State Board of Pharmacy. *Hicks*, 553 F.Supp. at 317–18. Defendants argue that *Hicks* controls here, and thus that Plaintiff's action against them in their individual capacities should be dismissed.

Plaintiff does not contest Defendants' implicit assertion that they were acting in their adjudicative roles in connection with the acts at issue in this lawsuit.[7] Instead, Plaintiff argues (1) that the Board had no jurisdiction to suspend his prescription privileges and (2) that *Hicks* does not control because one of the essential elements which the Supreme Court relied on in *Butz* is not present here.

■ Regarding Plaintiff's first argument, the court notes that the Board has "control of regulation of the practice of medicine." O.C.G.A. § 43–34–21(d). The Attorney General of Georgia has made the common sense finding that the term "the practice of medicine" encompasses the administration of drugs. Op.Ga.Att'y Gen. 79–45 (1979); Op. Ga.Att'y Gen. 79–2 (1979). The Georgia Supreme Court has held that "a [medical] license is not a contract and gives the holder no right to continue in the practice in the future unrestricted." *Hughes v. State Bd. of Medical Examiners*, 162 Ga. 246, 258, 134 S.E. 42 (1926). Finally, it is clear that the Board has, in fact, had occasion to grant a medical license which did not allow the recipient to prescribe drugs. *Smith v. State*, 147 Ga.App. 549, 551, 249 S.E.2d 353 (1978) ("Both the executive director and the assistant executive director of the [Composite State Board of Medical Examiners] testified that the board had restricted the appellant to the practice of anesthesiology, and the assistant executive director further testified that this meant that the appellant was not authorized to write prescriptions for amphetamines."). Given the foregoing authorities, it is very likely that the Board was, in fact, acting within its jurisdiction when it suspended Plaintiff's prescription privileges. The court thus finds that the Board did not act in the clear absence of all jurisdiction when it suspended Plaintiff's privileges.

■ The court now turns to Plaintiff's second argument. In *Butz*, the Supreme Court stressed that adjudication proceedings by federal agencies "are conducted before a trier of fact insulated from political influence." *Id.*, 438 U.S. at 513, 98 S.Ct. at 2914. The Court went on to note that "a [federal] hearing examiner is not responsible to or subject to the supervision or direction of employees or agents engaged in the performance of investigative or prosecution functions for the agency." *Id.* at 514, 98 S.Ct. at 2915. Given

---

7. "The Supreme Court has made clear that absolute immunity depends upon the particular function performed by the official." *Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1378 (9th Cir.1989) (citing *Butz*, 438 U.S. at 508, 98 S.Ct. at 2911), *cert. denied*, 498 U.S. 980, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990). "The prime category of executive officials that are entitled to absolute immunity are those whose functions parallel the functions of judges and prosecutors." *Id.* (citing *Butz*, 438 U.S. at 511–15, 98 S.Ct. at 2913–15). Defendants clearly were acting in a prosecutorial/judicial capacity when they summarily suspended Plaintiff's prescription privileges and medical license. *Horwitz v. State Bd. of Medical Examiners*, 822 F.2d 1508, 1513 (10th Cir.) ("The Board members . . . point out that all of the steps from the summary suspension through the final decision of the hearing panel constituted the adjudicative scheme found in *Butz* to confer absolute immunity on executive-agency officials. We agree."), *cert. denied*, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987).

this emphasis, Plaintiff has presented several affidavits which he alleges show that the hearing officers whom the Board utilizes are not "independent and insulated from the type of political and agency pressures which the federal system was designed to [prevent]." Brief in Opposition at 15.

Plaintiff's argument is without merit. As the facts set out earlier show, at the time Plaintiff filed his Brief in Opposition he had not even had occasion to appear before a hearing officer. The actions Plaintiff complains of in his pleadings are actions of the *Board*, not of some hearing officer.[8] The orders summarily suspending his prescription privileges and medical license each end with the following language: "This order is signed and attested by the Joint Secretary of the State Examining Boards on behalf of the Composite State Board of Medical Examiners." Plaintiff has produced no evidence that a hearing officer, instead of the Board, acted in either instance to suspend his prescription privileges or medical license. His argument regarding the Board's hearing officers' alleged lack of impartiality is thus irrelevant. Therefore, Defendants' motion to dismiss is granted to the extent that Plaintiff seeks damages from the members of the Board in their individual capacities.

 Regardless of the court's finding vis-a-vis the members of the Board, Plaintiff asserts that Defendants Morgan, Andrew Watry ("Watry"), and William G. Miller, Jr. ("Miller") are not entitled in any event to absolute immunity. Brief in Opposition at 19. Watry and Morgan are, respectively, Executive Director and Medical Director of the Board. Miller is Joint Secretary of all of Georgia's examining boards. O.C.G.A. § 43–1–1. As for Watry and Morgan, the court is persuaded that as de jure staff members of the Board they should share its entitlement to absolute immunity. *See Bettencourt v. Board of Regis. in Medicine,* 904 F.2d 772, 784–85 (1st Cir.1990) ("We find that, just as a law clerk is entitled to absolute immunity from damages actions based on his participation in the decision of a particular case,

... defendant Hyams should receive absolute immunity for his actions as legal adviser in plaintiff's case before the Board.") (citations omitted). As for Miller, the court has been unable to find his name mentioned in Plaintiff's complaint (other than in the style). Elsewhere, his name appears only as the signer (for the Board) of the orders suspending Plaintiff's prescription privileges and medical license. Therefore, the court finds that Miller is entitled to absolute immunity as a de facto member (in this instance) of the Board's staff.

 Finally, Defendants argue that the court should dismiss Plaintiff's request for injunctive relief on abstention grounds. As noted above, Plaintiff seeks injunctive relief "in the event the Board permanently revokes his license upon unconstitutional procedures," as well as to prevent "the defendants from continuing the custom and practice of summarily suspending doctors' licenses without notice and an opportunity to be heard." The court finds that abstention is warranted here as to Plaintiff's first request for injunctive relief. The court *sua sponte* dismisses Plaintiff's second request for injunctive relief because it is clear to a legal certainty that Plaintiff's request is without merit.

In *Younger, supra,* a defendant in a state criminal proceeding sought an order from a federal district court enjoining the state proceeding on the ground that the statute under which he was being prosecuted was unconstitutional. The Supreme Court rejected the state court defendant's position, holding that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Younger,* 401 U.S. at 45, 91 S.Ct. at 751. The Supreme Court has extended the *Younger* doctrine to state civil proceedings that are administrative in nature. *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 626–27, 106 S.Ct. 2718, 2722–23, 91 L.Ed.2d 512 (1986); *accord Bettencourt,* 904 F.2d at 776–79; *Simopoulos v. Virginia State Bd. of Medicine,* 644 F.2d 321, 329–31 (4th Cir.1981). Abstention is appro-

---

**8.** Members of the Board do not serve at the pleasure of an executive official but instead serve four-year terms. O.C.G.A. § 43–34–22.

priate if the state proceedings satisfy three conditions: "(1) the proceedings are judicial (as opposed to legislative) in nature; (2) they implicate important state interests; and (3) they provide an adequate opportunity to raise federal constitutional challenges." *Bettencourt,* 904 F.2d at 777 (citations omitted).

As for the first condition, a proceeding by the Board that would lead to the permanent revocation of Plaintiff's license upon unconstitutional procedures would obviously involve a "judicial inquiry [that] investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *New Orleans Public Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 370, 109 S.Ct. 2506, 2519, 105 L.Ed.2d 298 (1989) (quoting *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)). Thus, the proceedings would be judicial in nature.

Regarding the second condition, regulating the competence of medical doctors clearly implicates important state interests. *Bettencourt,* 904 F.2d at 778 (citations omitted). Turning to the third condition, Defendants point out that Plaintiff may seek judicial review of a decision by the Board in either Fulton County Superior Court or the superior court of Plaintiff's county of residence. O.C.G.A. § 50–13–19. This section of Georgia's Administrative Procedure Act expressly provides that Plaintiff may raise as an issue on appeal any alleged "violation of constitutional ... provisions" by the Board. O.C.G.A. § 50–13–19(h)(1). If Plaintiff is dissatisfied with the Superior Court's decision, he may appeal that decision to the Georgia Court of Appeals and, ultimately, the Georgia Supreme Court. O.C.G.A. § 50–13–20. Thus, Georgia's statutory scheme provides Plaintiff with an adequate opportunity to raise the issue of the Board's alleged violations of the Constitution.

The court finds that *Younger* abstention is appropriate as to Plaintiff's first request for injunctive relief, for all three of the conditions that *Bettencourt* describes are satisfied here. Therefore, the court dismisses without

prejudice Plaintiff's complaint to the extent that it seeks to enjoin the Board from permanently revoking Plaintiff's medical license upon unconstitutional procedures.

■ The court now addresses Plaintiff's request for injunctive relief to prevent "the defendants from continuing the custom and practice of summarily suspending doctors' licenses without notice and an opportunity to be heard." The court views Plaintiff's argument as a facial challenge to the constitutional validity of the statute under which the Board summarily suspended Plaintiff's license. Under that statute (part of the Georgia Administrative Procedure Act), an agency has the authority to order the summary suspension of "any license" without notice and a hearing if it makes a finding that "the public health, safety, or welfare imperatively requires emergency action" and the suspension order reflects this finding. O.C.G.A. § 50–13–18(c)(1). The Georgia Administrative Procedure Act expressly applies to any summary suspensions the Board orders. O.C.G.A. § 43–34–38.[9]

Despite Plaintiff's assertion to the contrary,[10] it is black letter law that in appropriate circumstances a state may summarily suspend a person's license without first according that person notice and a hearing. *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (summary suspension of horse trainer's license upheld where trainer was accused of negligence in connection with drugging of horse); *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) (summary suspension of driver's license upheld where driver's conduct fell into one of eighteen categories of prohibited conduct); *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (summary suspension of driver's license upheld where driver refused to submit to breath analysis test after being arrested for driving while intoxicated). Therefore, the court dismisses Plaintiff's second request for injunctive relief.

## CONCLUSION

Accordingly, Defendants' motion to dismiss [# 5–1] is GRANTED. Plaintiff's complaint

---

9. Both orders at issue here contain the finding that § 50–13–18(c)(1) requires.

10. Footnote 5, *supra.*

[# 1–1] is DISMISSED. This dismissal is without prejudice to the extent that Plaintiff seeks injunctive relief "in the event the Board permanently revokes his license upon unconstitutional procedures." The Clerk is DIRECTED to enter judgment on behalf of Defendants to the extent that Plaintiff's complaint seeks compensatory, general, or punitive damages from them in their official or individual capacities, as well as to the extent that it seeks an injunction preventing Defendants from summarily suspending doctors' licenses without notice and an opportunity to be heard. Defendants' motion for protective order [# 6–1] is DISMISSED AS MOOT.

SO ORDERED.